FILED by ____ D.C.
ELECTRONIC

**Mar 11, 2013**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### 13-20156-CR-MARTINEZ/MCALILEY
CASE NO._____

18 U.S.C. § 371

**UNITED STATES OF AMERICA**

**vs.**

**JOHN ROMNEY,**

        **Defendant.**

_____/

## INFORMATION

The United States Attorney charges that, at all times relevant to this Information:

## GENERAL ALLEGATIONS

At various times relevant to this Information:

1.      AMNET Mortgage Inc. ("AMNET Mortgage"), was a Delaware corporation doing business as a mortgage lender throughout the United States, including in the State of Florida. AMNET Mortgage did business in the State of Florida as American Mortgage Network of Florida. AMNET Mortgage was an affiliate of Wachovia Mortgage Corporation and Wachovia Bank NA.

2.      American Brokers Conduit LLC was a Delaware limited liability company doing business as a mortgage lender throughout the United States, including in the State of Florida.

3.      American Home Mortgage Investment Corp. was a Maryland corporation doing business as a mortgage lender throughout the United States, including the State of Florida.

4.      Citimortgage, Inc. was a Delaware corporation doing business as a mortgage lender throughout the United States, including the State of Florida.

5.      Property Collateral, Inc. was a Florida Corporation with its principal place of business listed as 10975 NW 63rd Street, Doral, Florida 33178.

6.      Two B Investments Group Inc. was a Florida Corporation with its principal place of business listed as 21800 SW 232nd Street, Miami, Florida 33170.

7.      Hartnett Development, Inc. was a Florida Corporation with its principal place of business listed as 1265 Campo Sand Avenue, Coral Gables, Florida 33146.

8.      Bayside Title Services, Inc. was a Florida corporation doing business as a title company in the state of Florida.

9.      Manhattan Enterprises Group, LLC was a Florida limited liability company with its principal place of business listed as 14975 SW 109th Lane, Miami, Florida 33196.

10.     MKD Investments Group, Inc. was a Florida corporation with its principal place of business listed as 11285 SW 73 Lane, Miami, Florida 33173.

11.     First National Funding & Real Estate Investment Corp. was a Florida corporation with its principal place of business listed as 9805 NW 52 Street, #502, Miami, Florida 33178.

12.     Defendant **JOHN ROMNEY**, an individual who resided in Miami-Dade County, Florida, was the president of Property Collateral, Inc.

13.     Co-Conspirator Angel Barroso, an individual who resided in Miami-Dade County, Florida, was the president of Two B Investments Group Inc.

14.     Co-Conspirator William Hartnett III, an individual who resided in Miami-Dade County, Florida, was the president of Hartnett Development, Inc.

15.     Co-Conspirator Rafael Ubieta, an individual who resided in Miami-Dade County, Florida, was the president of Bayside Title Services, Inc. and served as title and settlement agent for

2

and on behalf of Bayside Title Services, Inc. in closing the purchase and sale of real property in the State of Florida.

16.     Co-Conspirator Joel Zaldivar, an individual who resided in Miami-Dade County, Florida, was a licensed mortgage broker doing business in Miami-Dade County and the president of First Class Mortgage and Lending Corp.  As a mortgage broker, Zaldivar was responsible for preparing and processing mortgage applications and associated paperwork on behalf of real estate buyers.

17.     Co-Conspirator Kyle Baker, an individual who resided in Miami-Dade County, Florida, was a licensed mortgage broker doing business in Miami-Dade County and the president of First Class Mortgage and Lending Corp.  As a mortgage broker, Baker was responsible for preparing and processing mortgage applications and associated paperwork on behalf of real estate buyers.

18.     Co-Conspirator Martha Otero, an individual who resided in Miami-Dade County, Florida, was the manager of Manhattan Enterprises Group, LLC and the treasurer of MKD Investments Group, Inc.

19.     Co-Conspirator Fernando Tolon, an individual who resided in Miami-Dade County, Florida, was the president of First National Funding & Real Estate Investments Corp.

20.     J.C. acted as a straw buyer who allowed his identity and credit to be used in the purchase of 280 NE 78 Street, Miami, Florida 33138.

21.     Y.P. acted as a straw buyer who allowed her identity and credit to be used in the purchase of 6300 SW 85th Avenue, Miami, Florida 33143.

3

22.     D.Z. acted as a straw buyer who allowed his identity and credit to be used in the purchase of 700 NE 62 Street, Miami, Florida 33138.

23.     J.D. acted as a straw buyer who allowed his identity and credit to be used in the purchase of 185 SW 7 Street, Unit 3403, Miami, Florida 33130.

24.     The term "closing" referred to the legal event at which the transfer of an interest in real estate from seller to buyer formally took place, as well as the point at which funds were transferred between the various parties, such as from the lending institution to the buyer or to the seller on the buyer's behalf, which transfer was often accomplished by temporarily passing the funds through an intermediary referred to as a "closing agent" or "title company."

25.     The term "mortgage" was used in the real estate industry to refer to a loan to finance the purchase of real estate property, usually with specified payment periods and interest rates, in which the borrower/mortgagor gave the lender/mortgagee a lien on the property as collateral for the loan.

26.     The term "lenders" referred collectively to the mortgage lenders set forth in the preceding paragraphs 1 through 3, each of which extended mortgage loans and disbursed mortgage loan proceeds to fund the financing of residential properties in the State of Florida.  The lender was often referred to as the "lien holder."

27.     A HUD-1 Settlement Statement ("HUD-1 Statement") was a standard form required to be executed for the closing of real estate transactions.  The HUD-1 Statement itemized all aspects of the closing for the lender, including any payments made by the borrower, money due to the seller, and any fees paid to third parties in connection with the closing.

4

28.     The term "home equity line of credit" ("HELOC") refers to a loan in which the lender agrees to lend to the borrower a maximum amount of money within an agreed period, and the equity in the borrower's property serves as collateral for the loan.  The borrower is not advanced the entire sum of money up front, but uses a line of credit to borrow sums that total no more than the total amount of money authorized under the HELOC, similar to a credit card.

29.     "Cash-to-close" referred to the monetary obligations to be met by an individual, usually the buyer, in order for a closing on a particular real estate transaction to be completed.

## COUNT 1
## CONSPIRACY TO COMMIT WIRE FRAUD
### (18 U.S.C. § 371)

1.     Paragraphs 1 through 29 of the General Allegations section of this Information are realleged and fully incorporated by reference as if fully set forth herein.

2.     From in or around March 2007, through in or around October 2007, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**JOHN ROMNEY,**

did knowingly and willfully combine, conspire, confederate, and agree with Angel Barroso, William Hartnett III, Rafael Ubieta, Joel Zaldivar, Kyle Baker, Martha Otero, Fernando Tolon, and with other persons known and unknown to the United States Attorney to commit an offense against the United States of America, that is, to knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and transmitting and causing to be transmitted in interstate commerce, by means of wire

5

communication, certain writings, signs, signals, pictures and sounds, for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3.     It was the purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) using straw buyers to purchase and finance residential properties in Miami-Dade County, Florida; (b) submitting false and fraudulent mortgage loan applications, closing documents and other related loan documents to lending institutions, thereby inducing the lending institutions to make mortgage loans to straw buyers for the purchase and financing of the residential properties; (c) causing the lending institutions to loan more money than they otherwise would have loaned by preparing, and submitting to them, false and fraudulent HUD-1 Statements which did not accurately reflect the money disbursed to the buyers and sellers; and (d) diverting fraud proceeds for their personal use and benefit, and to further the fraud scheme.

## MANNER AND MEANS OF CONSPIRACY

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.     **JOHN ROMNEY**, Angel Barroso, William Hartnett III, Martha Otero, and others identified certain residential properties in Miami-Dade County, Florida, that could be used to defraud lenders, including, among others, the following properties:

(a)     280 NE 78 Street, Miami, Florida 33138;

(b)     6300 SW 85th Avenue, Miami, Florida 33143;

(c)     700 NE 62 Street, Miami, Florida 33138; and

(d)    185 SW 7 Street, Unit 3403, Miami, Florida 33130 (collectively, "the Properties").

5.    **JOHN ROMNEY**, Angel Barroso, Fernando Tolon and others recruited straw buyers, and directed and paid others to recruit straw buyers, to act as qualifying mortgage applicants in order to fraudulently purchase and finance the Properties.  Among the individuals recruited to act as straw buyers were J.C., Y.P., D.Z., and J.D.

6.    Joel Zaldivar, Kyle Baker and their co-conspirators prepared, and caused to be prepared, false and fraudulent mortgage applications and other related documents on behalf of the straw buyers.  The loan applications and related documents, which were submitted to lenders, contained numerous false statements and representations relating to the straw buyers' employment, income, deposits, assets, liabilities, other loan applications, intent to make the property a primary residence, and other information necessary for lenders to assess the straw buyers' qualifications to borrow money.  In some instances, the loan applications and related documents contained false statements and representations relating to the purchase price of the Properties.  The false and fraudulent documents were used to induce the lenders to fund mortgage loans to purchase and finance the Properties.

7.    As part of the loan application process, Joel Zaldivar and Kyle Baker created, and caused to be created, false and fraudulent verifications of employment for the straw buyers in order to further induce the lenders to approve the mortgage loans.

8.    As part of the closing process, Rafael Ubieta prepared, and caused to be prepared, and submitted to lenders false and fraudulent HUD-1 Statements which falsely stated, among other

things, that the straw buyers supplied their own cash-to-close funds at the closing of the sale transactions for various properties.

9.      Having received the false and fraudulent loan applications and related documents submitted by the defendant and his co-conspirators, the lenders approved the fraudulent loan requests and wired the loan proceeds in interstate commerce to Bayside Title Services Inc. in Miami, Florida, for distribution at the closing of the real estate transactions.  Over the course of the scheme, the defendant and his co-conspirators fraudulently caused the lenders to fund approximately $3,007,552.80 in loans.

10.     At or near the time of the closings, Rafael Ubieta fraudulently disbursed the sellers' loan proceeds to **JOHN ROMNEY**, Angel Barroso, William Hartnett III, Martha Otero and others, prior to and without receiving the cash-to-close payment from the straw buyers, contrary to the representations in the HUD-1 Statements.  **ROMNEY**, Barroso, Hartnett, Otero, and others then used the early-release loan proceeds to satisfy the straw buyers' cash-to-close obligations.

11.     At or near the time of the closings, **JOHN ROMNEY**, Angel Barroso, William Hartnett III, Martha Otero, and their co-conspirators caused fraudulent payments and disbursements to be made from the mortgage loan proceeds, and also fraudulently diverted loan proceeds from the sales transactions for their own personal benefit and/or to further the fraud scheme.

12.     Angel Barroso, Martha Otero and their co-conspirators made, and caused to be made, payments to the straw buyers for fraudulently allowing their names and credit to be used in obtaining the mortgage loans.  Ultimately, the defendants and their co-conspirators stopped making mortgage payments, causing many of the Properties to go into foreclosure and resulting in substantial losses to the lenders.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the purpose and object thereof, at least one of the conspirators committed and caused to be committed in the Southern District of Florida and elsewhere, at least one of the following acts, among others:

1.     On or about March 13, 2007, **JOHN ROMNEY**, Rafael Ubieta and Kyle Baker caused to be submitted to American Brokers Conduit fraudulent closing documents for a $304,000 first mortgage loan and a $73,714.84 second mortgage loan for 280 NE 78 Street, Miami, Florida 33138 on behalf of straw buyer J.C.

2.     On or about March 13, 2007, **JOHN ROMNEY**, Rafael Ubieta and Kyle Baker caused the transmission of a wire transfer in the amount of $306,575.33 from American Home Mortgage Investment Corp. in the State of New York to the account of Bayside Title Services, Inc. at Wachovia Bank in the Southern District of Florida relating to the purchase of 280 NE 78 Street, Miami, Florida 33138.

3.     On or about March 15, 2007, Rafael Ubieta wired $58,600 of the mortgage loan proceeds received from American Home Mortgage Investment Corp. for the purchase of 280 NE 78 Street, Miami, Florida 33138 to **JOHN ROMNEY** prior to receiving the buyer's cash-to-close payment required by the HUD-1.

4.     On or about March 15, 2007, using a portion of the funds wired to him by Rafael Ubieta, **JOHN ROMNEY** purchased a $15,301.78 cashier's check, which was used to satisfy the straw buyer's cash-to-close payment in connection with the purchase of 280 NE 78 Street, Miami, Florida 33138.

5.      On or about June 13, 2007, **JOHN ROMNEY**, Angel Barroso, Rafael Ubieta, and Joel Zaldivar caused to be submitted to AMNET Mortgage, Inc. fraudulent closing documents for a $999,950 mortgage loan and a $167,038 HELOC for 6300 SW 85th Avenue, Miami, Florida 33143 on behalf of straw buyer Y.P.

6.      On or about June 8, 2007, **JOHN ROMNEY**, Angel Barroso, Rafael Ubieta, and Joel Zaldivar caused the transmission of a wire transfer in the amount of $1,013,945.80 from AMNET Mortgage, Inc. in the State of California to the account of Bayside Title Services, Inc. at Wachovia Bank in the Southern District of Florida relating to the purchase of 6300 SW 85th Avenue, Miami, Florida 33143.

7.      On or about June 15, 2007, Angel Barroso provided **JOHN ROMNEY** with a check for $25,838.96 representing his portion of the proceeds in connection with the fraudulent purchase of 6300 SW 85th Avenue, Miami, Florida 33143.

8.      On or about September 28, 2007, **JOHN ROMNEY**, Rafael Ubieta, Joel Zaldivar, Martha Otero and Fernando Tolon caused to be submitted to Citimortgage, Inc. fraudulent closing documents for a $472,000 mortgage loan and an $88,450 HELOC for 700 NE 82 Street, Miami, Florida 33138 on behalf of straw buyer D.Z.

9.      On or about September 28, 2007, **JOHN ROMNEY**, Rafael Ubieta, Joel Zaldivar, Martha Otero and Fernando Tolon caused the transmission of a wire transfer in the amount of $567,731.54 from Citimortgage, Inc. in the State of New York to the account of Bayside Title Services, Inc. at Wachovia Bank in the Southern District of Florida relating to the purchase of 700 NE 82 Street, Miami, Florida 33138.

10.     On or about October 4, 2007, Fernando Tolon provided **JOHN ROMNEY** with a check for $12,000 representing his portion of the proceeds in connection with the fraudulent purchase of 700 NE 82 Street, Miami, Florida 33138.

11.     On or about October 1, 2007, **JOHN ROMNEY**, William Hartnett III, Angel Barroso, Rafael Ubieta, and Martha Otero caused to be submitted to Citimortgage, Inc. fraudulent closing documents for a $760,000 first mortgage loan and a $142.400 second mortgage loan for 185 SW 7 Street, Unit 3403, Miami, Florida 33130 on behalf of straw buyer J.D.

12.     On or about October 1, 2007, **JOHN ROMNEY**, William Hartnett III, Angel Barroso, Rafael Ubieta, and Martha Otero caused the transmission of a wire transfer in the amount of $906,041.70 from Citimortgage, Inc. in the State of New York to the account of Bayside Title Services, Inc. at Wachovia Bank in the Southern District of Florida relating to the purchase of 185 SW 7 Street, Unit 3403, Miami, Florida 33130.

13.     On or about October 9, 2007, William Hartnett III provided **JOHN ROMNEY** with a check for $10,000 representing his portion of the proceeds in connection with the fraudulent purchase of 185 SW 7 Street, Unit 3403, Miami, Florida 33130.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS
### 18 U.S.C. § 981(a)(1)( C)

1.     The allegations of this Information are realleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **JOHN ROMNEY**, has an interest.

2.    Upon conviction of a conspiracy to violate Title 18, United States Code, Section 371,

the object of said conspiracy being to commit wire fraud in violation of Title 18, United States Code,

Section 1343, as alleged in this Information, the defendant shall forfeit to the United States all of his

right, title and interest in any property constituting, or derived from, any proceeds the defendant

obtained directly or indirectly, as the result of such violation.

All pursuant to Title 18, United States Code, Sections 981(a)(1)( C), and the procedures set

forth in Title 21, United States Code, Section 853, made applicable by Title 28, United States Code,

Section 2461.


WIFREDO A. FERRER
UNITED STATES ATTORNEY


SEAN PAUL CRONIN
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

John Romney,

        **Defendant.**

_____/

CASE NO. _____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

| | | | | |
|---|---|---|---|---|
| New Defendant(s) | | Yes _____ | No ____ | |
| Number of New Defendants | | _____ | | |
| Total number of counts | | _____ | | |

**Court Division**: (Select One)

| | | | |
|---|---|---|---|
| X | Miami | _____ | Key West |
| _____ | FTL | _____ | WPB | _____ | FTP |

I do hereby certify that:

1.     I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.     I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.     Interpreter:     (Yes or No)    _No_____
         List language and/or dialect

4.     This case will take    _0___   days for the parties to try.

5.     Please check appropriate category and type of offense listed below:
          (Check only one)                    (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | X | Petty | | _____ |
| II | 6 to 10 days | _____ | Minor | | _____ |
| III | 11 to 20 days | _____ | Misdem. | | _____ |
| IV | 21 to 60 days | _____ | Felony | | X |
| V | 61 days and over | _____ | | | |

6.     Has this case been previously filed in this District Court? (Yes or No)   _No____
If yes:
Judge: _____    Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?    (Yes or No)   _No___
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____    District of _____

Is this a potential death penalty case? (Yes or No)    _No___

7.     Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?    _____ Yes   X _____ No

8.     Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?    _____ Yes   X _____ No

                  _____
                  SEAN PAUL CRONIN
                  ASSISTANT UNITED STATES ATTORNEY
                  Court No.A5500940

*Penalty Sheet(s) attached

REV 4/8/08

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** John Romney

**Case No:** _____

Count #: 1

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 371

**\* Max.Penalty:**          5 years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**